UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
CITY OF NEW YORK,

                        Plaintiff,                              **MEMORANDUM & ORDER**

            - against -                                         13 CV 6848 (RJD) (SMG)

BELL HELICOPTER TEXTRON, INC. and
PRATT & WHITNEY CANADA CORP.,

                        Defendants.
-------------------------------------------------------- x

DEARIE, District Judge

        The City of New York (the "City") seeks to recover the costs of a helicopter destroyed in

an accident after its engine failed. The helicopter was manufactured by defendant Bell Helicopter

Textron, Inc. ("Bell"), and its engine was manufactured by defendant Pratt & Whitney Canada

Corp. ("Pratt"). Defendant Bell moves to dismiss the claims against it, pursuant to Rule 12(b)(6),

arguing that the City's breach of contract and breach of implied warranty claims fail under the

plain terms of the contract. This Court agrees and, for the reasons stated below, grants Bell's

motion to dismiss in its entirety.

## BACKGROUND

1.  The Accident

        In early 2009, the City entered into a contract (the "Contract") with Edwards &

Associates, Inc. ("Edwards"), a former subsidiary of defendant Bell, for the purchase of two

helicopters.[1] Amended Complaint, ECF No. 18, at ¶ 11. Pursuant to the Contract, the City

purchased a Bell model 412 air-sea rescue helicopter (the "Bell Helicopter") for a total cost of

---

[1]     The City seeks to hold Bell liable as the manufacturer of the helicopter and as the
successor to and assignee of Edwards, the seller of the helicopter. Amended Complaint, ECF No.
18, at ¶ 7.

almost $12.5 million. Id. at ¶¶ 13, 18. The Bell Helicopter was equipped with a PT6-3D turbo-shaft engine (the "Pratt Engine"), manufactured by defendant Pratt. Id. at ¶ 19.

On September 22, 2010, six New York City Police Department officers (the "Flight Crew") were conducting a security patrol mission on board the Bell Helicopter. Id. at ¶ 22. As the Bell Helicopter was descending to land, the Flight Crew heard a loud "bang," accompanied by a sudden loss of power. Id. at ¶¶ 23-24. The Flight Crew made an emergency landing in the Jamaica Bay, destroying the Bell Helicopter and injuring the Flight Crew. Id. at ¶¶ 25, 27.

One month later, in October of 2010, Pratt issued a recall notice for gearboxes installed in certain of its helicopter engines, including the Pratt Engine. Id. at ¶ 36. The recall notice advised that "[a]n anomaly may exist" in the engines' gearshaft, which causes the gearshaft to "fracture, resulting in loss of power." Id. at ¶¶ 37-38. Meanwhile, the National Transportation Safety Board conducted an investigation into the accident and concluded that the power loss in the Pratt Engine had been caused by the fracture of its gearshaft. Id. at ¶¶ 29-30, 40-41.

2. The Contract

A. *General*

The Contract, as amended, comprises a master agreement (the "Master Agreement") and a series of appendices, labelled A through I, all of which are incorporated into and made part of the Contract. Contract, Master Agreement, at 13 ¶ VIII.5.[2] Conflicts in the interpretation of terms are resolved through an order of precedence clause, which grants first precedence to the Master Agreement, followed by each appendix, in alphabetical order. Id. at 13-14 ¶ VIII.5. The provisions of the Contract are governed by New York law. Id. at Appendix A, 20 ¶ 23.1.

---

[2]     There are two subsections labelled VIII.5. References to ¶ VIII.5 in this memorandum and order refer to the second so-named subsection.

B. *Warranties*

The Contract contains a series of warranties, three of which bear on this motion: (1) a helicopter warranty issued by Bell as manufacturer of the Bell Helicopter (the "Manufacturer's Warranty"), id. at Appendix I, 8; (2) a completion work warranty issued by Bell's subsidiary, Edwards, as seller of the Bell Helicopter (the "Seller's Warranty"), id. at 16; and (3) an engine warranty issued by Pratt as manufacturer of the Pratt Engine (the "Engine Warranty"), id. at 29.

Both the Manufacturer's Warranty and the Seller's Warranty contain three relevant limitations. First, Bell makes no warranty of and disclaims all liability for the Pratt Engine:

| 1. Disclaimer of Liability for Pratt Engine | |
| --- | --- |
| **Manufacturer's Warranty** | **Seller's Warranty** |
| Seller makes no warranty and disclaims all liability in contract or in tort (delict), . . . with respect to work performed by third parties at [p]urchaser's request and with respect to engines, engine accessories, . . . except [s]eller assigns each manufacturer's warranty to [p]urchaser to the extent such manufacturer's warranty exists and is assignable.<br><br>Id. at 8 (Manufacturer's Warranty). | Edwards . . . makes no warranty and disclaims all liability in contract or in tort, . . . with respect to engines, engine accessories, . . . and [p]urchaser furnished equipment or equipment manufactured by others and installed at [p]urchaser's request.<br><br>Id. at 16 (Seller's Warranty). |

Second, they limit the City's remedies to "repair or replacement" of the Bell Helicopter's

parts, expressly excluding any remedy for "incidental or consequential damages," defined

broadly to include damage to the Bell Helicopter:

| 2. Repair or Replacement Limited Remedy | |
|---|---|
| Manufacturer's Warranty | Seller's Warranty |
| The [p]urchaser's sole remedy for a breach of this warranty or any defect in a part is the repair or replacement of helicopter parts and reimbursement of reasonable freight charges as provided herein. Seller excludes liability, whether as a result of a breach of contract or warranty, negligence or strict product liability, for incidental or consequential damages, including without limitation, damage to the helicopter or other property . . . . <br><br> Id. at 8 (Manufacturer's Warranty). | The remedies of [p]urchaser and obligations of Edwards . . . are limited to the repair or replacement of helicopter parts as provided herein. Edwards . . . excludes liability, whether as a result of a breach of contract or warranty, negligence or strict product liability, for incidental or consequential damages including without limitation, damage to the helicopter components and assemblies . . . . <br><br> Id. at 16 (Seller's Warranty). |

Third, they disclaim, in capital letters, all other express or implied warranties, including

merchantability and fitness for a particular purpose:

| 3. Diclaimer of Express or Implied Warranties | |
|---|---|
| Manufacturer's Warranty | Seller's Warranty |
| THIS WARRANTY IS GIVEN AND ACCEPTED IN PLACE OF (i) ALL OTHER WARRANTIES OR CONDITIONS, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND (ii) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN CONTRACT OR IN TORT (DELICT), INCLUDING PRODUCT LIABILITIES BASED UPON STRICT LIABILITY, NEGLIGENCE, OR IMPLIED WARRANTY IN LAW. | THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE HEREOF. <br><br> . . . <br><br> THIS WARRANTY IS GIVEN AND ACCEPTED IN PLACE OF (i) ALL OTHER EXPRESS OR IMPLIED WARRANTIES, INCLUDING MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE AND (ii) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN CONTRACT OR IN TORT, INCLUDING PRODUCT LIABILITIES BASED UPON |

| Id. at 8 (Manufacturer's Warranty). | STRICT LIABILITY OR NEGLIGENCE ACTUAL OR IMPUTED. |
| --- | --- |
| | Id. at 16 (Seller's Warranty). |

The Engine Warranty limits the City's remedies, as well, providing that Pratt will "repair or replace" defective parts of the Pratt Engine, "including resultant damage" to the engine, itself. Id. at 29. However, the Engine Warranty specifically excludes any remedy for "special, incidental or consequential damages," arising from a defect in the Pratt Engine, including "expenses incurred external to the engine." Id.

C.  *Other Relevant Provisions*

Three other provisions of the Contract are arguably relevant to the motion at hand, all of which are located in Appendix A (Standard City Terms and Conditions for Non-Bid Purchase Contract), Part III (General Conditions) of the Contract. These three provisions are: (1) the right to inspect without waiver clause; (2) the no estoppel clause; and (3) the "standard new equipment" guarantee.

The right to inspect without waiver clause initially recites the City's right to inspect the Bell Helicopter upon delivery. Id. at Appendix A, 10 ¶ III.5.1. The provision emphasizes that the exercise by the City of this right, "shall in no way be deemed a waiver by the City of any right later to reject, revoke acceptance, or recover damages for [g]oods accepted which are not in fact free from patent or latent defects, or of [Bell]'s obligation to deliver conforming [g]oods." Id.

The no estoppel clause states that the City will not be estopped, after acceptance of and payment for the Bell Helicopter, from later showing that the Bell Helicopter does not conform to the Contract. Id. at p. 14 ¶ III.8.3. It further provides that the City "shall have the right to demand and recover from [Bell] such damages as it may suffer by reason of [Bell's] failure to comply

with th[e] Contract . . . and such right of the City shall include recovery for any payment made for any or all of the [g]oods delivered and accepted." Id.

The "standard new equipment" guarantee provides a guarantee that the Bell Helicopter is "standard new equipment, current model of regular stock product with all parts regularly used with the type of equipment offered" and "also that no attachment or part has been substituted or applied contrary to the manufacturer's recommendations and standard practice." Id. at 22 ¶ III.26. The guarantee also notes that "[e]very unit . . . must be guaranteed against faulty material and workmanship for a period of one year . . . unless otherwise specified." Id.

## PROCEDURAL HISTORY

The City brought suit against Bell in December of 2013, Complaint, ECF No. 1, amending the complaint in March of 2014 to add Pratt as a co-defendant, Amended Complaint, ECF No. 18. The amended complaint pleads two contract claims against Bell: (1) breach of contract for defective and nonconforming goods; and (2) breach of implied warranty.[3] Id. Defendant Bell moves to dismiss the claims brought against it, pursuant to Rule 12(b)(6), because: (1) the City's claims and requested damages are barred by the express terms of the Contract; and (2) the City has not alleged an actionable breach of the Contract by Bell.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Brown v. Daikin Am. Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In reviewing the complaint, this Court "accept[s] all well-pleaded allegations in the complaint as true [and] draw[s] all reasonable inferences in the plaintiff's favor." Chabad Lubavitch of

---

[3]     The amended complaint also pled an indemnification claim against Bell, which the City withdrew in its motion opposition papers. Plaintiff's Opposition Memo at 24.

Litchfield Cnty, Inc. v. Litchfield Historic Dist. Com'n, 768 F.3d 183, 191 (2d Cir. 2014) (quoting Bigio v. CocaCola Co., 675 F.3d 163, 169 (2d Cir. 2012)) (second alteration in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006). However, the amended complaint references and quotes the Contract frequently, to support its allegations. Amended Complaint, ECF No. 18; see also Declaration of Erik Haas in Support of Bell Helicopter Textron, Inc.'s Motion to Dismiss the Amended Complaint, ECF No. 28, at Exhibit A (providing a copy of the Contract to the Court) [hereinafter Contract]; Memorandum of Law of Plaintiff the City of New York in Opposition to Defendant Bell Helicopter Textron, Inc.'s Motion to Dismiss, ECF No. 29, at 3 (citing to the declaration of Erik Haas when referring to the Contract) [hereinafter Plaintiff's Opposition Memo]. Therefore, the Contract is properly considered in connection with this motion, because: (1) it is "integral" to the amended complaint; (2) it is relevant to the resolution of the City's claims; and (3) "no dispute exists regarding [its] authenticity or accuracy." Faulkner, 463 F.3d at 134.

To state a viable breach of contract claim, the City must allege (1) the existence of the Contract, (2) adequate performance of the Contract by the City, (3) breach of the Contract by Bell, and (4) damages. See Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996). "When interpreting a contract under New York law, the intention of the parties should control, and the best evidence of intent is the contract itself." Gary Friedrich Enter., LLC v. Marvel Characters,

Inc., 716 F.3d 302, 313 (2d Cir. 2013) (internal quotation marks and alteration omitted) (quoting Cont'l Ins. Co. v. Atl. Cas. Ins. Co., 603 F.3d 169, 180 (2d Cir. 2010)).

"Under New York law the initial interpretation of a contract is a matter of law for the court to decide," including "the threshold question of whether the terms of the contract are ambiguous." Alexander & Alexander Serv., Inc. v. These Certain Underwriters at Lloyd's, London, England, 136 F.3d 82, 86 (2d Cir. 1998) (internal quotation marks and citation omitted); see also Ali v. Fed. Ins. Co., 719 F.3d 83, 89 n.9 (2d Cir. 2013) ("If the relevant provisions are unambiguous, courts interpret and apply those provisions as a matter of law."). A contract is not ambiguous where its "language has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion." Chesapeake Energy Corp. v. Bank of New York Mellon Trust Co., N.A., 773 F.3d 110, 114 (2d Cir. 2014) (quoting Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010)) (internal quotation marks omitted). "[T]he language of a contract is not made ambiguous simply because the parties urge different interpretations," "[n]or does ambiguity exist where one party's view strains the contract language beyond its reasonable and ordinary meaning." Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 598 (2d Cir. 2005) (quoting Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992)) (internal quotation marks and alterations omitted). "When an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms." Lockheed Martin Corp. v. Retail Holdings, N.V., 639 F.3d 63, 69 (2d Cir. 2011) (citing South Rd. Assocs., LLC v. IBM, 793 N.Y.S.2d 835, 826 N.E.2d 806, 809 (2005)).

1. The City's Claims and Requested Damages are Barred by the Express Terms of the Contract

Defendant Bell argues that the Court need look no further than the warranties to decide this case. Under the Contract, defendant Bell is responsible for two warranties, the Manufacturer's Warranty and the Seller's Warranty. Contract, Appendix I, at 8, 16. However, both the Manufacturer's Warranty and the Seller's Warranty (1) make no warranty of and disclaim all liability for the Pratt Engine, (2) disclaim, in capital letters, all other express or implied warranties, including merchantability and fitness for a particular purpose, and (3) limit the City's remedies to "repair or replacement" of the Bell Helicopter's parts, specifically excluding any remedy for "incidental or consequential damages," defined broadly to include damage to the Bell Helicopter. Id. at 8 (Manufacturer's Warranty); id. at 16 (Seller's Warranty). Defendant Bell therefore argues that the City's claims and requested damages are barred by the clear and express terms of the warranties' disclaimers. This Court agrees.

*A. The City's Claims are Barred by the Warranties' Disclaimers*

Article 2 of the Uniform Commercial Code (the "U.C.C.") "generally permits disclaimers of warranties that are adequately clear and conspicuous." Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC, 832 F. Supp. 2d 194, 200 (E.D.N.Y. 2010). To exclude the implied warranty of merchantability, a contract "must mention merchantability" and such writing must be "conspicuous." N.Y. U.C.C. § 2-316(2). To exclude the implied warranty of fitness, "the exclusion must be by a writing and conspicuous." Id. For example, "[l]anguage to exclude all implied warranties of fitness is sufficient if it states . . . that '[t]here are no warranties which extend beyond the description on the face hereof.'" Id.

Both the Manufacturer's Warranty and the Seller's Warranty are one page, with normal sized font, and clearly state that Bell makes no warranty of and disclaims all liability for the Pratt

9

Engine. Contract, Appendix I, at 8 (Manufacturer's Warranty); id. at 16 (Seller's Warranty).

Additionally, both the Manufacturer's Warranty and the Seller's Warranty contain all capital letter paragraphs, disclaiming all other express or implied warranties, including merchantability and fitness for a particular purpose. Id. at 8 (Manufacturer's Warranty); id. at 16 (Seller's Warranty). Furthermore, the top of the Seller's Warranty states "THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE HEREOF." Id.

These disclaimers of liability for the Pratt Engine, as well as the disclaimers of liability for all other express or implied warranties, including merchantability and fitness for a particular purpose, are indisputably "conspicuous," and the City does not argue otherwise. See Shema Kolainu, 832 F. Supp. 2d at 200 (finding disclaimer conspicuous because it "[wa]s in capital letters in a separate block paragraph and specifically mention[ed] merchantability[] [and] fitness"); Warren W. Fane, Inc. v. Tri-State Diesel, Inc., No. 12-CV-1903 (TJM), 2014 WL 1806773, at *10 (N.D.N.Y. May 7, 2014) (applying New York law to find disclaimers of liability to be conspicuous when they were obvious and "set[] out in all capital letters the specific warranties that [we]re being disclaimed"); see also N.Y. U.C.C. § 1-201(10). Therefore, based on the clear and conspicuous liability limitations in the Manufacturer's Warranty and the Seller's Warranty, defendant Bell has disclaimed liability for the failure of the Pratt Engine.

To escape the effect of these warranty disclaimers, the City argues that the Seller's Warranty is not incorporated into the Master Agreement. Since the Court's decision does not require application of the Contract's order of precedence clause, this argument is not relevant.

*B. The City's Requested Damages are Barred by the Warranties' Limited Remedies*

Furthermore, the only warranty that does cover the Pratt Engine, the Engine Warranty, limits the City's remedies. While it provides that Pratt will "repair or replace" defective parts of the Pratt Engine, "including resultant damage" to the engine itself, the Engine Warranty specifically excludes any remedy for "special, incidental or consequential damages" arising from a defect in the Pratt Engine, including "expenses incurred external to the engine." Id. at 29.

The Manufacturer's Warranty and the Seller's Warranty limit the City's remedies, as well. While both provide that Bell will "repair or replace" the Bell Helicopter's parts, they specifically exclude any remedy for "incidental or consequential damages," defined broadly to include damage to the Bell Helicopter. Id. at 8 (Manufacturer's Warranty); id. at 16 (Seller's Warranty). However, as discussed, these warranties disclaim liability for the Pratt Engine.

Applying these warranty and damage limitations strictly—and assuming, as the amended complaint alleges, that the Bell Helicopter crash was caused by a defective gearshaft in the Pratt Engine—only Pratt's Engine Warranty covers the accident, thereby limiting the City's damages to the repair or replacement of the Pratt Engine. The costs of the resultant damage to the Bell Helicopter, external to the Pratt Engine, are the City's to bear alone.

Faced with this seemingly inequitable result, the City argues that, even if the Contract is found to limit their damages remedy to the repair or replacement of the Pratt Engine, the City may nonetheless still pursue damages for the cost of the Bell Helicopter because the "repair or replacement" limited remedy of the Engine Warranty fails of its essential purpose. Bell disagrees and argues that, even if the limited remedy in Pratt's Engine Warranty did fail: (1) this failure does not negate Bell's valid disclaimers of liability; and (2) the cost of the resultant damage to

the Bell Helicopter, external to the Pratt Engine, is barred by the warranties' express exclusion of consequential damages.

        i.    Even if the Limited Remedy Fails of its Essential Purpose, that does not Negate Bell's Disclaimers of Liability

The U.C.C. states that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided" in the code. N.Y. U.C.C. § 2-719(2). Whether changed circumstances have caused a limited remedy to fail of its essential purpose "depends on a demonstration that 'an exclusive remedy, which may have appeared fair and reasonable at the inception of the contract, as a result of later circumstances operates to deprive a party of a substantial benefit of the bargain.'" The Bd. of Mgrs. of the A Bldg. Condominium v. 13th & 14th Street Realty, LLC, 2013 N.Y. Misc. LEXIS 3949, at *13 (N.Y. Sup. Ct. 2013) (quoting Cayuga Harvester, Inc. v. Allis-Chalmers Corp., 465 N.Y.S.2d 606, 611, 95 A.D.2d 5, 11 (4th Dep't 1983)); see also N.Y. U.C.C. § 2-719(2), cmt. 1 (explaining that this provision applies "where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain").

"The most frequent application of 2-719(2) occurs when under a limited 'repair and replacement' remedy, the seller is unwilling or unable to repair the defective goods within a reasonable period of time." James J. White, Robert S. Summers & Robert A. Hillman, Uniform Commercial Code § 13:20 (6th ed. 2014) [hereinafter White & Summers]; see, e.g., Kraft v. Staten Island Boat Sales, Inc., 715 F. Supp. 2d 464, 476 (S.D.N.Y. 2010) (applying New York law to find that plaintiff had "adduced sufficient evidence that [the defendant]'s failure to timely remedy the water leak [in a boat] ha[d] deprived her of 'a substantial benefit of the bargain'"); New York Trans Harbor LLC v. Derecktor Shipyards Conn., LLC, 841 N.Y.S. 2d 821, 2007 N.Y. Slip. Op. 51084(U), at *8 (N.Y. Sup. Ct. 2007) (finding complaint sufficiently alleged that

a limited repair or replacement remedy failed of its essential purpose where water taxi vessels suffered "numerous and chronic breakdowns," requiring extensive repairs, many of which were unsuccessful or caused more damage); Cayuga, 95 A.D.2d at 11-12 (finding question of fact remained as to whether a repair or replacement remedy failed of its essential purpose where combine required hundreds of hours of down time for its many repairs).

"In a growing line of cases, the courts find a limited repair or replacement remedy to have failed of its essential purpose even though the seller had no previous opportunity to honor its remedial obligation," such as "where the warranted goods have been destroyed or severely damaged as a result of a defect." Roy Ryden Anderson, Damages Under the Uniform Commercial Code § 12:13 (2014); see, e.g., Champlain Enter., Inc. v. United States, 957 F. Supp. 26, 31 (N.D.N.Y. 1997) (applying Kansas law to find that "[c]learly, a reasonable juror could conclude that requiring [defendant] to merely provide a new part when the entire aircraft has been destroyed," in an accident would deprive the plaintiff of the substantial value of the bargain); Hadar v. Concordia Yacht Builders, Inc., 886 F. Supp. 1082, 1099-1100 (S.D.N.Y. 1995) (describing Massachusetts law that a limited remedy fails of its essential purpose "where the defect has completely destroyed the entire product"); but see General Elec. Co. v. Varig-S.A., No. 01-CV-11600 (RJH) (JCF), 2004 WL 253320, at *4 (S.D.N.Y. Feb. 10, 2004) (applying New York law to find that repair or replacement limited remedy for a plane engine did not deprive the plaintiff airline of "the substantial value of the contract," where engine failed and caused damage to the hull of the aircraft, because the airline "received and made good use of the [e]ngine"); Central Mining, Inc. v. Simmons Mach. Co., Inc., 547 So. 2d 529, 530-531 (Ala. 1989) (finding that repair, replace, or credit limited warranty for defective loader, which caught fire and was destroyed, did not fail of its essential purpose because there was no evidence that

the defendants had been "called on to make repairs to the hydraulic system that allegedly caused the fire").

However, another line of cases interpreting U.C.C. § 2-719(2) has emphasized that the provision "is not concerned with arrangements which were oppressive at their inception, but rather with the application of an agreement to novel circumstances not contemplated by the parties." White & Summers at § 13:20 (quoting 1 N.Y. State Law Revision Comm'n, 1955 Report 584 (1955)); see, e.g., Proto Constr. & Dev. Corp. v. Superior Precast, Inc., No. 99-CV-2851 (NG), 2002 WL 1159593, at *8 (E.D.N.Y. May 28, 2002) (finding *sua sponte* that, under New York law, limited remedy of repair or replacement of noise barriers did not deprive plaintiff of substantial value of the bargain, as both parties knew of the risk of delay and allocated that risk to the plaintiff); BAE Sys. Info. and Elec. Sys. Integration, Inc., 941 F. Supp. 2d. 197, 209 (D.N.H. 2013) (applying New Hampshire law to find that if the limited remedy—that the vendor, the sole source of a certain technology, would repair or replace its product—was "oppressive, it ha[d] been so since the inception of the agreement," and the parties had allocated that risk to plaintiff).

Certainly, the parties could utilize both of these lines of cases to argue that the repair or replacement limited remedy in the Engine Warranty did or did not fail of its essential purpose, given that the faulty gearshaft is alleged to have destroyed the entire Bell Helicopter. However, whether or not the limited remedy in the Engine Warranty made by defendant *Pratt* fails of its essential purpose is an irrelevant question with respect to defendant *Bell*. For, whether a remedy fails of its essential purpose under U.C.C. § 2-719 is entirely separate from whether the seller has properly disclaimed warranties under U.C.C. § 2-316(2).

U.C.C. § 2-719 "specifically addresses the quantum of remedies that must be available in the event of a *breach*" and "the comments to the U.C.C. itself make it clear that section 2-719 does not diminish the ability of sellers to disclaim warranties." Shema Kolainu, 832 F. Supp. 2d at 203 (emphasis added); see also N.Y. U.C.C. § 2-719, cmt. 3 (recognizing that limitations on consequential damages may not operate in an unconscionable manner but stating that "[t]he seller in all cases is free to disclaim warranties in the manner provided in § 2-316"); McNally Wellman Co. v. New York State Elec. & Gas Corp., 63 F.3d 1188, 1197 (2d Cir. 1995) (noting that "[u]nder New York law, . . . it is well established that the failure of a limited remedy does not render ineffective all other limitations of liability"); The Bd. of Mgrs. of the A Bldg. Condominium v. 13th & 14th Street Realty, LLC, 6 N.Y.S.3d 249, 250, 126 A.D.3d 634 (1st Dep't 2015) (affirming dismissal of complaint because roofing materials company had only warrantied the watertightness of their product and therefore the limited remedy, return of the purchase price, did not fail of its essential purpose, where plaintiffs had to fix an improper installation) (citing Cayuga, 95 A.D.2d at 11); Ritchie Enter. v. Honeywell Bull, Inc., 730 F. Supp. 1041, 1047 (D. Kan. 1990) (noting that plaintiff's argument that the failure of a limited remedy revives disclaimed warranties "confuses the distinction made in the [U.C.C.] between disclaimers of warranties (2-316) and limitations of remedies (2-719)").

As discussed, the City's breach of contract claims are barred by the express terms of the Contract because the Manufacturer's Warranty and the Seller's Warranty both clearly disclaim (1) liability for the Pratt Engine and (2) any and all implied warranties under the U.C.C. The

possible failure of the City's repair or replacement limited remedy from Pratt does not negate

Bell's valid disclaimers of liability.[4]

> ii. Even if Recovery for the Cost of the Bell Helicopter were not Barred as a Consequential Damage, this Remedy would not be Available from Bell because the City has not Alleged an Actionable Breach of the Contract by Bell

Defendant Bell also argues that, even if the limited remedy in Pratt's Engine Warranty

failed of its essential purpose, the cost of the resultant damage to the Bell Helicopter, external to

the Pratt Engine, is barred by the warranties' consequential damages disclaimers. As discussed

above, both the Manufacturer's Warranty and the Seller's Warranty limit the City's remedies to

"repair or replacement" of the Bell Helicopter's parts, specifically excluding any remedy for

"incidental or consequential damages," defined broadly to include damage to the Bell Helicopter.

Contract, Appendix I at 8 (Manufacturer's Warranty); id. at 16 (Seller's Warranty).

The U.C.C. permits parties to limit available remedies as they see fit. N.Y. U.C.C.

§ 2-719(1)(a) (providing that an "agreement may . . . limit or alter the measure of damages

recoverable"). This includes limitations or exclusions of consequential damages—which are

essentially "an allocation of unknown or undeterminable risks"—so long as this limitation or

exclusion does not "operate in an unconscionable manner." Id. at § 2-719(3), cmt. 3.[5]

---

[4]     On a related note, even if the limited remedy provided by *Pratt* should fail, defendant *Bell* is not made liable for this failure. See ICS/Executone Telecom, Inc. v. Performance Parts Warehouse, Inc., 569 N.Y.S.2d 42, 171 A.D.2d 1066, 1066 (4th Dep't 1991) (noting that the limited remedy in that case was provided by the manufacturer and therefore the seller "is not bound by it") (emphasis added).

[5]     The City does not suggest that the consequential damages limitation is unconscionable, because the City cannot argue that there was an inequity of bargaining power between the parties. Furthermore, the City has not pleaded that it had an "absence of meaningful choice" when it executed the Contract. Therefore, the exclusion of consequential damages is not unconscionable as a matter of law and survives even if the limited remedy fails of its essential purpose. See McNally, 63 F.3d at 1198 (noting that the "determination of unconscionability is a

16

Furthermore, it is "well established" under New York law that "a limitation on incidental or consequential damages remains valid even if an exclusive remedy fails." McNally, 63 F.3d at 1197; see also Cayuga, 95 A.D.2d at 16 ("The limited remedy of repair and a consequential damages exclusion are two discrete ways of attempting to limit recovery for breach of warranty" and the U.C.C. "tests each by a different standard," because the "[t]he former survives unless it fails of its essential purpose, while the latter is valid unless it is unconscionable.") (quoting Chatlos Sys., Inc. v. Nat'l Cash Register Corp., 635 F.2d 1081, 1086 (3d Cir. 1980)).

The City argues, however, that the destruction of the Bell Helicopter is a direct, not a consequential damage. The contracting parties clearly agreed that recovery from Bell for damage to the Bell Helicopter was barred, noting in both the Manufacturer's Warranty and the Seller's Warranty that the disclaimer of consequential and incidental damages "includ[ed] without limitation, damage to the helicopter or other property." Contract, Appendix I at 8 (Manufacturer's Warranty); see also id. at 16 (stating in the Seller's Warranty that "incidental or consequential damages includ[es] without limitation, damages to the helicopter components and assemblies"). However, even if recovery from Bell for the cost of the Bell Helicopter were not barred as a consequential damage, this remedy would not be available to the City because, as discussed further below, the City has not alleged an actionable breach of the Contract by Bell. See, e.g., Shema Kolainu, 832 F. Supp. 2d at 203 (stating that U.C.C. § 2-719 "specifically addresses the quantum of remedies that must be available in the event of a *breach*") (emphasis added); Earl Brace & Sons v. Ciba-Geigy Corp., 708 F. Supp. 708, 711 (W.D. Pa. 1989) ("There

---

question of law" and involves two parts: first, "an inquiry into any inequities of bargaining power", and second, "a showing that the contract was both procedurally and substantively unconscionable when made"); see also N.Y. U.C.C. § 2-302(1).

can be no breach where the warranty has been disclaimed pursuant to Section 2[-]316 and no consequential damages where there is no breach.").

In sum, the only available warranty is the Pratt Engine Warranty, which limits the City's damages to the repair or replacement of the Pratt Engine. And even if (1) that limited remedy failed of its essential purpose, or (2) the cost of the Bell Helicopter were not barred as a consequential damage, the City would still not be able to recover the cost of the Bell Helicopter from Bell because Bell disclaimed liability for the failure of the Pratt Engine and the City has not alleged an actionable breach of the Contract by Bell.

2. The City has not Alleged an Actionable Breach of the Contract by Bell

Unable to base its breach of contract claims in the Contract's warranties, the City is therefore forced to scour the Contract for more obscure provisions. Accordingly, the amended complaint alleges that Bell breached the following three provisions, all located in the Contract's "General Conditions" section: (1) the right to inspect without waiver clause; (2) the no estoppel clause; and (3) the "standard new equipment" guarantee. Bell counters that the City's construction of these three provisions goes against the plain meaning of the Contract and the basic rules of contract construction. This Court agrees with Bell.

A. *The Right to Inspect Without Waiver Clause Does Not Create a New Obligation of Bell*

The right to inspect without waiver clause gives the City the right to inspect the Bell Helicopter upon delivery and ensures that the exercise of this right "shall in no way be deemed a waiver by the City of *any* right later to reject, revoke acceptance, or recover damages" from Bell for defects in the Bell Helicopter. Contract at Appendix A, 10 ¶ III.5.1 (emphasis added).

The amended complaint states that this language "expressly preserves the City's right to seek damages" from Bell for defects in the Bell Helicopter, Amended Complaint, ECF No. 18, at

18

¶ 58, and the City asserts that this clause is independent from and takes precedence over the express limitations on the remedies available to the City, located in the warranties in Appendix I. The City therefore argues that the right to inspect without waiver clause *creates* a new obligation for Bell to deliver conforming goods, without any limitation or condition on the remedies available in the event of breach. The City's position is untenable. It is clear and unambiguous that the right to inspect without waiver clause is intended merely to *preserve* existing rights to remedies located elsewhere in the Contract.

The U.C.C. provides that a buyer accepts goods if the buyer has not rejected the goods after having had a reasonable opportunity to inspect them, N.Y. U.C.C. § 2-606(1)(b), and a buyer is precluded from rejecting goods that the buyer has already accepted, id. at § 2-607(2); see also Seabury Constr. Corp. v. Jeffrey Chain Corp., No. 98-CV-5941 (MBM), 2000 WL 1170109, at *2 (S.D.N.Y. Aug. 17, 2000) ("Goods that a buyer has in its possession necessarily are accepted or rejected by the time a 'reasonable opportunity' for inspecting them passes.") (citing N.Y. U.C.C. § 2-606(1)). However, the effects of the U.C.C.'s provisions may be varied by agreement. N.Y. U.C.C. § 1-302(a). Therefore, it is common for sophisticated parties, such as those involved in this case, to provide that a buyer will retain the right to later reject goods, especially those with possible latent defects, despite an earlier inspection. See, e.g., Seabury Constr. Corp. v. Jeffrey Chain Corp., 289 F.3d 63, 70 (2d Cir. 2002) (quoting City contract clause providing that "[i]nspection . . . of materials and equipment . . . shall not relieve the [c]ontractor of his obligation to perform work in strict accordance with the [c]ontract").

Upon review of the right to inspect without waiver clause, it is clear and unambiguous that the clause is intended merely to *preserve* the City's existing right to remedies under the Contract. See Seabury Constr. Corp., 298 F.3d at 70 (noting that a similar right to inspect

without waiver clause in a City contract was "inconsistent with a conclusion that the testing and inspection provisions [of the contract] negate the *other* contractual specifications") (emphasis added).

Furthermore, the brief, general language of the right to inspect without waiver clause does not override the clear and precise limitations on remedies set forth in the warranties. See Aramony v. United Way of Am., 254 F.3d 403, 413-14 (2d. Cir. 2001) (noting that "it is a fundamental rule of contract construction that 'specific terms and exact terms are given greater weight than general language,'" and therefore finding that even though a broadly worded article "manifest[ed] a generalized intent" to provide expansive employee benefits, this provision was "limited by the specific operative language" of a later article) (quoting Restatement (Second) of Contracts § 203(c) (1981)); RJE Corp. v. Northville Indus. Corp., 329 F.3d 310, 314 (2d Cir. 2003) ("In assessing ambiguity, [courts must] consider the entire contract to safeguard against adopting an interpretation that would render any individual provision superfluous.") (internal quotation marks omitted) (quoting Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir. 1993)); Zullo v. Varley, 868 N.Y.S.2d 290, 291, 57 A.D. 3d 536, 537 (2d Dep't 2008) ("Where possible, a contract should be interpreted to avoid inconsistencies and to give meaning to all of its provisions . . . .") (quoting Malleolo v. Malleolo, 731 N.Y.S.2d 752, 753, 287 A.D.2d 603, 603 (2d Dep't 2001)); N.Y. U.C.C. § 2-316(1) ("Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other . . . .").

B. *The No Estoppel Clause Does Not Create a New Obligation of Bell*

The no estoppel clause states that the City will not be estopped, after acceptance of and payment for the Bell Helicopter, from later showing that the Bell Helicopter does not conform to the Contract. Contract, Appendix A, at 14 ¶ III.8.3. It further provides that "[t]he City shall have the right to demand and recover from [Bell] such damages as it may suffer by reason of [Bell]'s failure to comply with th[e] Contract," including "recovery for any payment made for any or all of the [g]oods delivered and accepted." Id.

Once again, the City asserts that this general language sets forth the City's right to seek damages for the full loss of the Bell Helicopter, without any limitation or condition, independent from and with precedence over the express limitations of the warranties in Appendix I. The City further argues that the order of precedence clause resolves any conflicts between the no estoppel clause and the warranties in favor of the no estoppel clause. The Court is not persuaded for two reasons.

First, there is no conflict. Under the clear wording of the no estoppel clause, the City is entitled to "such damages as it may suffer by reason of [Bell]'s *failure to comply with th[e] Contract*," but the City has not alleged an actionable breach of the Contract by Bell. Id. (emphasis added); see also Seabury Constr. Corp., 289 F.3d at 70 (stating that, because of a no estoppel clause in a City contract, the City's acceptance of a product after testing "d[id] not waive the *otherwise applicable* contract specifications") (emphasis added); c.f. Central Park Plaza Corp. v. City of New York, 26 N.Y.S.2d 241, 247-48 (N.Y. Sup. Ct. 1941) (noting that it "is *fundamental*" that before the City could apply a no estoppel clause in a construction contract, "it is incumbent upon the City . . . to establish by proof that the contractor . . . *failed to comply with the contract* and specifications") (emphasis added).

Second, the location and context of the no estoppel clause convey merely the intent to preserve existing rights of the City to seek remedies under the Contract, despite payment. To imply that the clause creates a liability for the full cost of the Bell Helicopter, separate and apart from the warranties, is an unreasonable interpretation that would wholly negate the express liability limitations in the warranty provisions. See Aramony, 254 F.3d at 413-14; RJE Corp., 7 F.3d at 1095; Zullo, 868 N.Y.S.2d at 291, 57 A.D. at 537. Such a strained interpretation goes against the instructions of New York contract law and proves unpersuasive in this case.

### C. The City has not Alleged that Bell Breached the "Standard New Equipment" Guarantee

The "standard new equipment" guarantee provides a guarantee from Edwards that the Bell Helicopter is "standard new equipment, current model of regular stock product with all parts regularly used with the type of equipment offered." Contract, Appendix A, at 22 ¶ III.26. The guarantee further provides that "[e]very unit . . . must be guaranteed against faulty material and workmanship for a period of one year . . . *unless otherwise specified.*" Id. (emphasis added).

The amended complaint alleges that Bell breached this guarantee because the Pratt Engine's gearshaft was "substandard" and the Bell Helicopter did not conform to the Contract. Amended Complaint, at ¶ 57. However, by its own terms, the "standard new equipment" guarantee clearly means "standard" equipment (i.e. "parts regularly used with the type of equipment offered") that is "new" (i.e. "current model of regular stock product"). See Lockheed Martin Corp., 639 F.3d at 69; Aetna Cas. and Sur. Co., 404 F.3d at 598.

Furthermore, the Manufacturer's Warranty and the Seller's Warranty do "otherwise specif[y]" that the Pratt Engine is guaranteed by Pratt, not by Bell. Contract, Appendix I, at 8 (Manufacturer's Warranty); id. at 16 (Seller's Warranty). Thus, by the plain language of the

Contract, Bell cannot be found to have breached the "standard new equipment" guarantee because of the faulty gearshaft in the Pratt Engine.

In sum, the amended complaint does not allege any actionable breach by Bell of the Contract's (1) right to inspect without waiver clause, (2) no estoppel clause, or (3) "standard new equipment" guarantee. The Manufacturer's Warranty and the Seller's Warranty make clear that the destruction of the Bell Helicopter on account of engine failure was a risk borne by the City under the Contract. Reversion to the necessarily broader provisions of the Contract's "General Conditions" section cannot change that unfortunate reality.

## CONCLUSION

Defendant Bell's motion to dismiss the claims brought against it in the amended complaint, pursuant to Rule 12(b)(6), is granted in its entirety. The City's breach of contract and breach of implied warranty claims fail because: (1) the City's claims and requested damages are barred by the express terms of the Contract; and (2) the City has not alleged an actionable breach of the Contract by Bell.

The City's indemnification claim against defendant Bell is dismissed on consent.


SO ORDERED.

Dated: Brooklyn, New York
      June 16, 2015

                                  /s/ Judge Raymond J. Dearie

                                  RAYMOND J. DEARIE
                                  United States District Judge